**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

MAELA E. TOWNSEND,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,[1]

    Defendant.

CIVIL ACTION NO.: 2:16-cv-147

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Morton Gold ("the ALJ" or "ALJ Gold") denying her claim for a period of disability and disability insurance benefits. Plaintiff urges the Court to reverse and remand the ALJ's decision. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on December 20, 2012, alleging that she became disabled on May 15, 2012, due to degenerative bone disease, advance stage osteoarthritis, anxiety, and muscular degeneration. (Doc. 11, p. 1; Doc. 7-3, p. 34; Doc. 7-6, p. 6.) After her claim was denied initially and upon reconsideration,

---

[1] The Court **DIRECTS** the Clerk of Court to change the name of the Acting Commissioner from Carolyn W. Colvin to Nancy A. Berryhill upon the record and docket of this case.

Plaintiff filed a timely request for a hearing.[2] On February 26, 2015, ALJ Gold conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified. Mark Leaptrot, a vocational expert, also appeared at the hearing. ALJ Gold found that Plaintiff was disabled within the meaning of the Social Security Act ("the Act") from May 15, 2010, through April 25, 2013. However, ALJ Gold also found Plaintiff's disability ended on April 26, 2013, due to medical improvement related to the ability to work and that Plaintiff was able to perform substantial gainful activity from April 26, 2013, through the date of his decision. (Doc. 7-3, pp. 34–35.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Doc. 7-2, p. 2.)

Plaintiff, born on July 21, 1964, was fifty (50) years old when ALJ Gold issued his final decision. (Doc. 7-5, p. 2.) She has a high school education and certified nursing assistant training. (Doc. 7-6, p. 7.) Plaintiff's past relevant work experience includes employment in auto parts and convenience stores, as an apparel manager in a retail store, and at a golf course. (Id.)

## DISCUSSION

### I. The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only

---

[2] Plaintiff filed a Title II application on August 16, 2011, and the determination on that application was reopened due to the submission of "new and material evidence[.]" (Doc. 7-3, p. 34.)

> unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Id. at 693–94 (ellipsis in

original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).[3] If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of May 15, 2010, through the date of ALJ Gold's decision on April 25, 2015. (Doc. 7-3, p. 37.) At Step Two, the ALJ determined that Plaintiff had bilateral hip replacement surgical residuals exacerbated by obesity and anxiety, conditions considered "severe" under the Regulations. (Id.) The ALJ determined Plaintiff was under a disability from May 15, 2010, through April 25, 2013, as her severe impairments significantly limited Plaintiff's ability to perform basic work activities, and she met the requirements of Listing 1.02A (major dysfunction of a weight-bearing joint). (Id. & at p. 38.) At Step Three, ALJ Gold found that, beginning on April 26, 2013, Plaintiff's impairments (which were the same as were present during Plaintiff's period of

---

[3] In Barnhart v. Thomas, 540 U.S. 20, 28 (2003), the United States Supreme Court found the fourth step of the Social Security Administration's ("SSA") five-step evaluation process to be a reasonable construction of 42 U.S.C. § 423(d)(1)(A)'s definition of disability. In Barnhart, the Third Circuit Court of Appeals disapproved of the fourth step. Specifically, the Third Circuit construed Section 423(d)(1)(A) to require that a claimant's previous work be "substantial gainful work which exists in the national economy" in order to disqualify the claimant from receiving benefits. Barnhart, 540 U.S. at 23. The Supreme Court reversed the Third Circuit and held that the SSA reasonably interpreted the phrase "substantial gainful work which exists in the national economy" to only modify "other" work (i.e., work other than the claimant's previous work). Id. In reaching this conclusion, the Supreme Court afforded deference to SSA's statutory interpretation pursuant to Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984). Id. at 26–29. The soundness of Chevron deference has been repeatedly and compellingly questioned. See, e.g., Michigan v. EPA, ___ U.S. ___, 135 S. Ct. 2699, 2712–14 (June 29, 2015) (Thomas, J., concurring). However, the doctrine still stands as binding precedent that this Court must follow. Moreover, the Supreme Court's decision in Barnhart rested on textual rules of statutory interpretation, including the "rule of the last antecedent." 540 U.S. at 26–28. Thus, it appears that, even without resorting to atextual rules of construction, including Chevron deference, the SSA's five-step process comports with Congress' definition of disability.

disability) did not meet or medically equal the severity of a listed impairment, either singly or in combination. (Id. at p. 39.) Instead, the ALJ determined medical improvement occurred as of April 26, 2013, such that Plaintiff's disability ended. (Id. at p. 40.) The ALJ found that Plaintiff had the residual functional capacity, beginning April 26, 2013, through the date of his decision, to perform work at the light exertional level, with the following exceptions: no climbing of ladders, ropes, or scaffolds; individually sitting, standing, walking, pushing and/or pulling for at least six hours of an eight-hour workday; occasional (up to one-third of an eight-hour workday) lifting or carrying of 20 pounds and 10 pounds frequently (two-thirds of an eight-hour workday); individually climbing ramps/stairs, kneeling, crouching, and crawling for no more than one-third of an eight-hour workday; and avoidance of concentrated exposure to extreme vibration that might exacerbate her hip pain problems. (Id. at p. 41.) ALJ Gold noted Plaintiff's anxiety limited her to performing work with a specific vocational preparation of 1-4, and he also noted that, although Plaintiff's concentration could be intermittently disrupted by up to one-third of an eight-hour workday at a skilled level, she could pay enough attention to details to meet the general productivity requirements of a job within the same workday, if the work is "simple, repetitive, routine, boring or detailed in nature." (Id.) The ALJ further noted Plaintiff could perform assigned tasks by the end of the same workday, even though her pace could be disrupted once or twice a week. At the next step, ALJ Gold concluded that Plaintiff was able to perform her past relevant work as a cashier, as this job was not precluded by Plaintiff's residual functional capacity. (Id. at p. 45.) Thus, the ALJ did not proceed to the fifth and final step.

**II.   Issues Presented**

Plaintiff contends the ALJ erred by improperly discounting the opinion of her treating physician. Plaintiff also contends the ALJ erred by improperly assessing her subjective

5

complaints of pain and her credibility. Further, Plaintiff asserts the ALJ's finding that she had the residual functional capacity to return to her past relevant work is not supported by substantial evidence. (Doc. 11, pp. 14–26.)

### III. Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are

not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

## IV. Whether ALJ Gold Properly Discounted the Opinion of Plaintiff's Treating Physician

Plaintiff asserts the ALJ's failure to give proper credit to Dr. McClain's opinion is reversible error. (Doc. 11, p. 14.) Plaintiff avers the only reason ALJ Gold discounted Dr. McClain's opinion is because Dr. Vasantha-Kumar "'totally contradicted'" Dr. McClain's[4] opinion in a quarterly office visit progress note. (Id. at p. 16 (quoting Doc. 7-3, p. 42).) However, Plaintiff maintains Dr. Vasantha-Kumar's purpose in creating this progress note was "not to document functional limitations[,]" (id.), and thus, this progress note cannot be a proper basis to reject Dr. McClain's opinion. Contrary to the ALJ's determination, Plaintiff alleges Dr. Vasantha-Kumar's opinion as to Plaintiff's functional limitations is similar to and supportive of Dr. McClain's opinion, as shown in the new evidence submitted to the Appeals Council. (Id. at pp. 17–18.) Plaintiff notes the ALJ discounted the State agency medical consultants as being inconsistent and non-policy compliant. Thus, Plaintiff asserts Dr. McClain provided "the only detailed medical opinion" regarding her physical limitations. (Id. at p. 19.)

The Commissioner maintains the ALJ properly weighed Dr. McClain's opinion. (Doc. 14, p. 6.) Specifically, the Commissioner contends ALJ Gold properly discounted Dr. McClain's opinion contained in the lumbar spine residual functional capacity questionnaire

---
[4] The parties and the ALJ provide differing spellings for the names of Drs. McClain and Vasantha-Kumar. The Court refers to these doctors as their names are provided in the record.

7

because it was inconsistent with Dr. Vasantha-Kumar's opinion that Plaintiff had no restrictions in her hips and/or lower back in 2013 and 2014.  In addition, the Commissioner asserts Dr. Vasantha-Kumar's treatment notes "consistently show" Plaintiff had normal musculoskeletal and neurological examinations, and these notes contradict Dr. McClain's "highly restrictive opinion." (Id. at p. 7.)  Defendant alleges Dr. McClain's opinion is also inconsistent with his April 10, 2013, treatment note, which indicated Plaintiff's limp was markedly decreased, her cellulitis was totally resolved, and she was doing well at that time.  (Id. at p. 8.)  The Commissioner argues ALJ Gold's decision to discount the state agency physician's opinion is supported by substantial evidence.  Finally, the Commissioner notes Plaintiff fails to show that the evidence submitted to the Appeals Council warrants remand.  (Id. at p. 9.)

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2)).  "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).

"Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241).  "The ALJ has wide latitude to determine what weight to

assign to those opinions, so long as he operates within the regulatory and judicial frameworks." Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013). "For instance, when discounting a medical opinion, he should consider several factors, including the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record." Id. (citing 20 C.F.R. §§ 404.1527(c) & 416.927(c)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179 (citation omitted). Failure to "clearly articulate the reasons for giving less weight to the opinion of a treating physician" is "reversible error." Lewis, 125 F.3d at 1440 (citation omitted).

ALJ Gold discounted Dr. McClain's physical residual functional capacity assessment of January 21, 2015, because Dr. Vasantha-Kumar's quarterly office visit examination notes did not indicate any physical restrictions involving Plaintiff's hips and/or low back "from a musculoskeletal, neurological, or psychiatric standpoint from 2013 to 2014." (Doc. 7-3, p. 42.) ALJ Gold summarized Plaintiff's office visits with Dr. Vasantha-Kumar from this time period, which relevantly provided for Plaintiff's complaints of pain in her pelvic region and thigh but not for any limitations associated with this pain.[5] (Id. at p. 41; see, e.g., Doc. 7-15, pp. 26–27.)

In addition, ALJ Gold discounted Dr. Vasantha-Kumar's mental residual functional capacity assessment dated February 17, 2015, because this assessment was "totally contradicted" by Dr. Vasantha-Kumar's own office visit notes, which indicated Plaintiff had "no depressive symptoms or signs and rarely note[d] any anxiety or panic attacks." (Doc. 7-3, p. 42.) The ALJ observed Plaintiff's entire medical record only mentioned three (3) panic attacks, two of which occurred in Dr. Vasantha-Kumar's early treatment notes but were not repeated or mentioned

---

[5] Dr. Vasantha-Kumar's office visit notes which post-date ALJ Gold's decision and were submitted to the Appeals Council also did not reveal any limitations associated with Plaintiff's complaints of pain in her pelvic region and thigh. (Doc. 7-2, pp. 20–28.)

since that time. (Id. at p. 43.) Additionally, ALJ Gold noted there was no evidence from Dr. Vasantha-Kumar's notes from 2013 through 2014 of concentration disruption, thought process disorganization, or anything else involving Plaintiff's mental status that qualified as "marked"[6] limitations. Further, the ALJ remarked there was no evidence of decompensation that caused Plaintiff to be homebound, hospitalized, or institutionalized for two weeks or more at a time—even once—at "any time [Plaintiff] has alleged disability[,] let alone over the 2014/2015 year [the assessment] allegedly encompasse[d]." (Id.) ALJ Gold noted Dr. Vasantha-Kumar indicated in this assessment that Plaintiff's anxiety and depression required medication and psychotherapy, yet there was no evidence Plaintiff underwent psychotherapy or was referred to mental health specialists. (Id. at p. 42.)

Moreover, ALJ Gold discounted the opinion of Dr. William Corey made as a result of his consultative psychological evaluation of Plaintiff on July 20, 2013. Specifically, ALJ Gold pointed to Plaintiff's past relevant work experience and educational endeavors, which indicated Plaintiff functioned in "at least the average range of intelligence[]", contrary to Dr. Corey's opinion that Plaintiff was functioning in the low average range of intelligence and that Plaintiff was not malingering during testing. (Id.)

Further, ALJ Gold discounted the State agency consultants' determinations for several reasons: 1) the adjudicator found Plaintiff had no severe musculoskeletal impairments, yet indicated Plaintiff was restricted to light exertional work, which is a "contradiction on its face[]"; 2) the medical evidence did not establish osteoarthritis or degenerative disc disease of the

---

[6] ALJ Gold referred to Listing 12.06 (anxiety-related disorders) when discussing whether Plaintiff has marked limitations under this Listing. (Doc. 7-3, p. 39.) "The term 'marked' means more than moderate but less than extreme and covers a limitation that interferes 'seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis.'" Simms v. Colvin, No. CV 114-212, 2015 WL 6509128, at *4 (S.D. Ga. Oct. 28, 2015) (internal citation omitted), *report and recommendation adopted*, 2015 WL 7313410 (S.D. Ga. Nov. 19, 2015).

lumbosacral spine; 3) the assessment of Plaintiff's abilities to perform detailed job instructions was "murky" compared to the psychological consultative examiner's finding that Plaintiff would only have difficulty with complex job instructions; 4) the adjudicator was "policy noncompliant" in ignoring Plaintiff's past relevant work; 5) had the adjudicator been policy compliant, there was a "good chance" the case would have been decided at the Fourth Step; 6) the incorrect medical vocational guideline was used at the Fifth Step because Plaintiff's past relevant work required a different guideline; and 7) the adjudicator assigned sedentary exertional work activities to a light physical residual capacity, contrary to policy. (Id. at pp. 44–45.)

ALJ Gold clearly stated his reasons for discounting the opinions of Drs. McClain, Vasantha-Kumar, and Corey. ALJ Gold found these opinions to be contradicted by other objective evidence of record and, in the case of Dr. Vasantha-Kumar, contradicted by his own office visit notes. Thus, the ALJ had "good cause" to discount these opinions. Moreover, ALJ Gold's reasons to discount the State agency's determination were plentiful and given as being contrary to the objective evidence of record and at odds with Social Security policy. ALJ Gold's determination to give less weight to these opinions is supported by substantial evidence, and this enumeration of error is without merit.

## V. Whether ALJ Gold Properly Discredited Plaintiff's Subjective Complaints and Credibility

In making his credibility determination, Plaintiff asserts ALJ Gold did not consider the record as a whole. Plaintiff contends her testimony that her left hip has lost muscle and "gives way" is confirmed by Dr. McClain's January 2015 progress note. (Doc. 11, p. 20.) Plaintiff asserts her reported daily activities are very limited, performed primarily in her home, and are consistent with her inability to perform sustained work activities due to limitations caused by pain. Plaintiff also asserts the ALJ did not properly credit statements from her daughter and

mother, and their statements further support Plaintiff's subjective complaints and limitations. (Id. at p. 22.)

The Commissioner asserts the objective medical findings do not establish that Plaintiff's condition was as limiting as she alleged. Additionally, the Commissioner alleges ALJ Gold properly considered Plaintiff's activities in evaluating her subjective complaints and allegations. (Doc. 14, p. 11.) However, the Commissioner avers ALJ Gold did not "unduly rely" on Plaintiff's activities, nor did he find Plaintiff's activities to be dispositive evidence of her ability to work. (Id.) Rather, the Commissioner states the ALJ considered Plaintiff's activities in conjunction with other evidence. The Commissioner also states the ALJ properly considered statements from Plaintiff's daughter and mother, but these statements did not prove disabling limitations. (Id.)

In order to establish disability based on testimony of pain and other symptoms, a claimant must show: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming severity of alleged pain, or (b) that the objectively determined medical condition could reasonably be expected to give rise to claimed pain. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). If a plaintiff "testifies as to [her] subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer, 395 F.3d at 1210 (quoting Foote v. Chater, 67 F.3d 1553, 1561–62 (11th Cir. 1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." Id. (internal citation omitted). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's]

medical condition as a whole.'" Id. at 1210–11 (quoting Foote, 67 F.3d at 1561). Additionally, in determining whether an ALJ's credibility determination is supported by substantial evidence, "[t]he question is not . . . whether the ALJ could have reasonably credited the plaintiff's testimony, but whether the ALJ was clearly wrong to discredit it." Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011).

The ALJ determined that, while Plaintiff's medically determinable impairments could reasonably be expected to produce some of Plaintiff's alleged symptoms, her statements about the intensity, persistence, and limiting effects of these symptoms were not "entirely credible[.]" (Doc. 7-3, p. 43.) Of note, ALJ Gold stated there was no evidence of any "significant worsening" in Plaintiff's condition. (Id.) ALJ Gold cited Plaintiff's hearing testimony that her left hip became infected, despite her hip replacement surgery. Additionally, ALJ Gold noted Plaintiff's allegations that her right leg would get numb and have "electric shocks" about once a day, that her right lower extremity gave away, and her leg goes numb when she sits or stands for thirty (30) minutes. (Id.) However, ALJ Gold noted Dr. McClain's records from March and April 2013 indicated Plaintiff's infection had been resolved, Plaintiff's limp was markedly decreased, the cellulitis was totally resolved, and Plaintiff was doing well. (Id.) Moreover, Plaintiff's medical records from February 4, 2014, revealed Plaintiff had normal range of motion, strength, and deep tendon reflexes; no tenderness, swelling, or deformity; normal gait with normal motor function; and no focal deficits. (Id. at p. 44.)

The ALJ observed Plaintiff's contentions she has poor concentration, multiple thoughts distract her, her ability to complete simple tasks is variable, and that she has become a recluse. ALJ Gold looked to the February 4, 2014, medical records, which indicated Plaintiff was cooperative, her mood and affect were appropriate, and she had normal judgment. (Id.) The

13

ALJ noted that, on November 17, 2014, Plaintiff had no anxiety or depression and was cooperative with appropriate mood and affect and normal judgment on psychiatric examination. ALJ Gold also noted there was no evidence Plaintiff underwent any psychotherapy or had been referred to any mental health specialists. (Id.)

In addition, ALJ Gold opined Plaintiff's described daily activities, which included napping, sporadic use of a cane, watching television, using a computer when able, grocery shopping, and driving, were "not limited to the extent one would expect, given [Plaintiff's] complaint of disabling symptoms and limitations." (Id.) Moreover, the ALJ noted Plaintiff's daughter and mother submitted lay statements regarding Plaintiff's ability to function. While ALJ Gold found these statements "generally credible," the statements did not prove Plaintiff has "*disabling* limitations[.]" (Id. (italics in original).)

It is evident ALJ Gold did not find Plaintiff's allegations regarding disabling conditions to be credible, as he found Plaintiff's allegations to be contradicted by the record. ALJ Gold made specific credibility findings, and he considered Plaintiff's medical history as a whole. What is more, ALJ Gold accepted the statements from Plaintiff's daughter and mother to be "generally credible", but he did not find these statements went to the heart of the matter— whether Plaintiff had disabling conditions which rendered her unable to perform her past relevant work. ALJ Gold met the legal requirements as to his credibility findings, and Plaintiff offers no valid reason why this Court should reject those findings. This enumeration of error is without merit.

**VI. Whether ALJ Gold Erred in Determining Plaintiff can Return to her Past Relevant Work**

Plaintiff maintains the ALJ failed to include specific functional limitations supported by the record to the vocational expert, and thus, the vocational expert's testimony is not substantial

14

evidence to support the ALJ's finding that she can perform her past relevant work. (Doc. 11, p. 24.) Specifically, Plaintiff notes ALJ Gold's reasons to discredit Dr. McClain's opinion are not supported by substantial evidence, and ALJ Gold failed to include his own findings as to Plaintiff's concentration and pace when questioning the vocational expert.

The Commissioner contends the ALJ was not required to include Dr. McClain's limitations in his hypothetical to the vocational expert. The Commissioner also contends the ALJ included Plaintiff's concentration limitation in his hypothetical. The Commissioner states Plaintiff has not proved her condition imposed limitations beyond those the ALJ included in his hypothetical, and the vocational expert's testimony supports a finding that Plaintiff can return to her past relevant work. (Doc. 14, pp. 12–13.)

"To support a finding that the claimant is able to return to her past relevant work, the ALJ must: (1) consider all the duties of that work and (2) evaluate the claimant's ability to perform them in spite of her impairments." Klawinski v. Comm'r of Soc. Sec., 391 F. App'x 772, 775 (11th Cir. 2010) (citing Lucas v. Sullivan, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990)). A claimant seeking disability benefits bears the burden of proving that she cannot perform her past relevant work either as she performed it or as it is generally performed in the national economy. 20 C.F.R. §§ 404.1520(f) & 404.1560(b)(3). "If the ALJ finds that the claimant cannot perform the functional demands and duties of her past job as she actually performed it, he will consider whether the claimant can perform the functional demands and duties of the occupation as generally required by employers throughout the national economy." Scharber v. Comm'r of Soc. Sec., 411 F. App'x 281, 282 (11th Cir. 2011) (citing SSR 82-61, 1982 WL 31387 (1982)).

The ALJ may consider the testimony of a vocational expert in determining whether the claimant still possesses the ability to perform her past relevant work. 20 C.F.R.

§ 404.1560(b)(2). "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." Waldrop v. Comm'r of Soc. Sec., 379 F. App'x 948, 952 (11th Cir. 2010) (citing Phillips, 357 F.3d at 1240). The hypothetical questions which the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, No. 97-C-1548-N, 1999 WL 1335578, *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)).

During the hearing, ALJ Gold inquired of Mark Leaptrot, the vocational expert, whether a hypothetical individual with the following background and limitations would be able to perform Plaintiff's past relevant work, either as she described her activities or as set forth in the Dictionary of Occupational Titles. (Doc. 7-2, p. 103.) The ALJ's hypothetical to Mr. Leaptrot asked him to consider an individual who: is a high school graduate with some college credits and certified nursing assistant training and can read, write, and perform simple mathematical computations without difficulty; is limited to light exertional work with no climbing of ladders, ropes, or scaffolding; can individually sit, stand, walk, push, and/or pull for at least six hours of an eight-hour workday; can occasionally lift and carry twenty pounds and frequently lift or carry ten pounds; can individually climb ramps and stairs, kneel, crouch, and crawl for no more than a third of an eight-hour workday; can have no concentrated exposure to extreme vibration; has anxiety limiting her to performing unskilled and semi-skilled work activities with a specific vocational preparation of 1 to 4; has her concentration intermittently disrupted for up to a third of an eight-hour workday, if the work is skilled; has the ability to pay attention to details to meet general productivity requirements of jobs within the same workday, if the work she is doing is

simple, repetitive, routine, boring, or detailed in nature; has her pace disrupted once or twice a week but could perform assigned tasks by the end of the same workday; and has hip replacement surgical residuals, exacerbated by being a bit overweight. (Id. at pp. 102–03.)

As described above, ALJ Gold determined Plaintiff has the residual functional capacity to return to her past relevant work as a cashier. The ALJ outlined in his residual functional capacity finding those limitations he found were supported by the evidence of record. The hypothetical ALJ Gold posed to the vocational expert included those limitations the ALJ found credible. As ALJ Gold did what was required of him, this enumeration of error is without merit.[7]

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of

---

[7] ALJ Gold's decision is not as thorough as most of the administrative decisions this Court reviews. However, this observation does not translate to a finding that the ALJ's decision is not supported by substantial evidence.

the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 23rd day of February, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA